JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **JOHN BLACKBURN AND DIANE BLACKBURN,**<br><br>Plaintiff,<br><br>vs.<br><br>**WALMART, INC.,**<br><br>Defendant. | **Case No.: ED CV 18-2487-DOC (SPx)**<br><br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]** |

Before the Court is Defendant Walmart, Inc.'s ("Walmart" or "Defendant") Motion for Summary Judgment ("Motion") (Dkt. 29) as to Plaintiffs John Blackburn ("John") and Diane Blackburn's ("Diane") (collectively, "Plaintiffs") Complaint (Dkt. 1-1). Oral arguments were held in this matter on August 26, 2019. After considering the papers and hearing the arguments raised by the parties, the Court GRANTS Defendant's Motion for Summary Judgment.

## I. BACKGROUND

### A. Facts[1]

On September 7, 2017, Plaintiff John Blackburn was shopping alone for canned dog food at a Walmart store located at 79292 U.S. Highway 111, La Quinta, CA 92553 ("the store"). Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment ("SUF") ¶ 1; Complaint at 8; Mot. at 1. Plaintiff John Blackburn had a Maltese who was a picky eater, and Blackburn was looking for cans of chicken-flavored, Pedigree brand dog food. SUF ¶ 2. In the store, John Blackburn found two cans of chicken-flavored Pedigree dog food and intended to buy a third. *Id.* ¶ 3. John Blackburn lowered himself to his to hands, knees, and elbows as he reached deep into the bottom shelf to find a third can. *Id.* ¶ 4. A can of dog food struck John Blackburn in the head, leaving a 1.5 inch abrasion, and caused blood to drip from his head. *Id.* ¶ 5. John Blackburn denies leaning on or bumping the shelf in any way as he attempted to retrieve the third can. *Id.* ¶ 6.

The Assistant Manager of the store, Dominick Garcilazo, and then-Support Manager of the store, Arnold Cortez, responded to the incident and assisted Plaintiff with his injury. *Id.* ¶ 8. Cortez inspected the scene of the incident and photographed the canned dog food display and shelves minutes after the incident. *Id.* ¶ 9. Cortez found a can of chicken-flavored, Pedigree dog food on the floor; this can was dented and had a smudge of what appeared to be Plaintiff's blood on it ("subject can"). *Id.* ¶¶ 10–11. The subject can has gone missing and was not produced in discovery. Plaintiff's Statement of Genuine Dispute ("SGD") (Dkt. 38).

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

Walmart's policy is that employees have no discretion to deviate from Walmart's Pre-Set Modular, which directs where each product is to be stocked, based on the weight of the product and the capacity of each shelf. SUF ¶¶ 14–15. Defendant thus argues Walmart's Pre-Set Modular showed that the subject can was stocked on the second shelf from the bottom, rather than the top shelf. SUF ¶ 16. Plaintiff argues that this policy was not followed at the store on September 7, 2017. SGD ¶ 15.

Walmart contends that the subject can was stocked on the second shelf from the bottom in the store, but Plaintiff disputes this. SGD ¶ 16. Walmart contends that the top shelf was stocked with one can on top of another can and no more than two cans on top of each other; Plaintiff disputes this to the extent Walmart argues the shelfs were stocked this way prior to the incident versus after the incident, which is when the photographs were taken. SGD ¶ 18. Walmart's Top Stock policy prohibits stocking merchandise more than 20 inches high on its top shelf. SUF ¶ 17. Walmart contends the top shelf was stacked in accordance with Walmart's policies during the incident. SUF ¶ 21. Plaintiff disputes this to the extent Walmart claims that pursuant to its stocking policies, no Pedigree chicken canned dog food were on the top shelf and to the extent Walmart claims its display was stocked properly. SGD ¶ 21.

Walmart associates are trained to perform "bump-tests" on the shelves after each new display is stocked. *Id.* ¶ 22. Garcilazo personally performed a bump-test at the canned dog food display shortly after the incident, and no cans shifted or fell from the shelf. *Id.* ¶ 23.

### B. Procedural History

Plaintiffs filed the Complaint in the instant Action on October 24, 2018 in the Superior Court, County of Riverside (Dkt. 1-1). Defendant removed the case to this Court on November 27, 2018. Notice of Removal (Dkt. 1). Plaintiffs brings three causes of action: general negligence, premises liability, and loss of consortium as to Plaintiff John Blackburn's wife, Plaintiff Diane Blackburn. *See generally* Compl.

On July 1, 2019 Defendant filed the instant Motion (Dkt. 29). Plaintiff opposed on July 15, 2019 ("Opposition" or "Opp'n") (Dkt. 36). Defendant replied on July 22, 2019 ("Reply") (Dkt. 42).

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence … will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III.     DISCUSSION

Walmart argues that Plaintiff John Blackburn cannot succeed on his negligence claim or his premises liability claim, and that because these underlying claims fail, Plaintiff Diane Blackburn cannot succeed on her loss of consortium claim. *See generally* Mot. The Court will discuss each claim in turn.

#### A.  Negligence Claim and Premises Liability Claim

Defendant argues that Plaintiff's negligence claim and premises liability claim fail because Walmart acted reasonably in maintaining its premises and no dangerous condition existed on its premises that caused Plaintiff's injury. Mot. at 7–14. Plaintiff counters that there is a genuine dispute of material fact as to whether Walmart breached its duty to John Blackburn in creating a dangerous condition, and whether Walmart's breach was the proximate cause of Plaintiff's injuries. Opp'n at 5–19. Plaintiff also argues he can invoke *res ipsa loquitur* because there is sufficient circumstantial evidence of negligence. Opp'n at 21–23.

In California, "although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001). The elements of a negligence claim and a premises liability claim are the same under California law: duty of care, breach, causation, and damages. *Arreola v. Daniel Food Enterprises, Inc.*, 2013 WL 3776314, at *2 (Cal. App. 2d July 17, 2013) (citing *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001); Cal. Civ. Code § 1714(a)). Additionally, to succeed on a premises liability claim against a store owner, a plaintiff must demonstrate that the owner had "either actual or constructive knowledge of the dangerous condition or [had] been able by the exercise of ordinary care to discover the condition." *Ortega*, 26 Cal. 4th at 1205 (quoting *Givetz v. Boys' Market*, 91 Cal. App. 2d 827, 829 (1949)).

##### 1.     Duty of Care

As noted above, a store owner owes customers a duty to exercise reasonable care in keeping customers reasonably safe. *Ortega*, 26 Cal. 4th at 1205. A store owner meets that duty "by making reasonable inspections of the portions of the premises open to customers, and the

care required is commensurate with the risks involved." *Id.* (citing *Bridgeman v. Safeway Stores, Inc.*, 53 Cal. 2d 443, 448 (1960)). In self-service stores, where "customers are invited to inspect, remove, and replace goods on the shelves, the exercise of ordinary care may require the owner to take greater precautions and make more frequent inspections that would otherwise be needed to safeguard against the possibility that such a customer may create a dangerous condition by disarranging the merchandise." *Bridgman*, 53 Cal. 2d at 448. "However, the basic principle to be followed in all these situations is that the owner must use the care required of a reasonably prudent [person] acting under the same circumstances." *Id.*

Plaintiff bring suit against the store, a self-service Walmart location, for negligence and premises liability. Accordingly, the duty of care that Defendant owed Plaintiff is articulated above, and Plaintiff John Blackburn may only succeed on his claims if he can demonstrate that the store breached this duty.

### 2. Breach of Duty and Causation

Plaintiff John Blackburn has the burden to introduce evidence demonstrating that the Walmart store had actual or constructive knowledge of a dangerous condition regarding the stacking of dog food cans. *See Ortega*, 26 Cal. 4th at 1212 ("[P]laintiffs still have the burden of producing evidence that the dangerous condition existed for at least a sufficient time to support a finding that the defendant had constructive notice of the dangerous condition"); *see also Alacan v. Target Corp.*, 2015 WL 10945603, at *3 (noting that it is plaintiff's burden to establish defendant's actual or constructive knowledge of a dangerous condition).

Here, Plaintiff has not met his burden to introduce evidence demonstrating that Defendant had actual or constructive knowledge of a dangerous condition. Plaintiff argues that a dangerous condition existed because the subject can was stocked on the top shelf of the store, and "Walmart's employees stocked the can in a dangerous manner causing it to fall on Plaintiff's head." Opp'n at 10. As a threshold matter, though, Plaintiff has not shown that the subject can was stocked on the top shelf, and thus cannot meet his burden to prove that Walmart had actual or constructive knowledge of a dangerous condition. It is undisputed that Plaintiff John Blackburn does not know from which shelf the subject can fell. SGD ¶ 13.

Plaintiff cites Garcialazo's incident report of the incident, in which he wrote that a can of dog food fell off the top stock;[2] however, Garcialazo testified that he wrote the report based on what Plaintiff told him, and that Garcialazo himself did not determine from where the subject can fell. Reply to GDF (Dkt. 42-3) ¶ 43. As Plaintiff admits, he did not, in fact, know from which self the subject can fell. SGD ¶ 13.

Plaintiff's Opposition also argues that other cans of Pedigree dog food were stocked on the top shelf, and thus there is a dispute of material fact as to whether the subject can was stocked on the top shelf. Opp'n at 12 (citing Plaintiff's Exhibit 8). However, while the photographs of the shelf do show Pedigree dog food cans stocked on the top shelf, they also show such cans stocked on other shelfs. Mot. at 1 (citing Defendant's Exhibit C). Plaintiff has not provided any evidence demonstrating that the subject can was stock on this highest shelf rather than a lower shelf. And Walmart's Pre-Set Modular shows that cans similar to the subject can were stocked on a lower shelf. SUF ¶ 16. Even construing the facts in the light most favorable to the Plaintiff, then, the Court finds Plaintiff has not bet his burden to demonstrate his proffered dangerous condition based on stocking of the subject can on the top shelf. that the subject can was stocked on the top shelf, and thus cannot establish a breach of duty by Walmart based on this proffered dangerous condition.[3]

Additionally, Plaintiff does not meet his burden to demonstrate any other breach of duty by Walmart due to a dangerous condition involving the subject can. Walmart's policies dictate that employees are trained to perform bump-tests on the shelves after each display is stocket. SUF ¶ 22. Assistance Manager Garcialazo personally performed such a bump-test at the canned dog food display shortly after the incident, and no cans shifted or fell from the shelf. SUF ¶ 23. Plaintiff maintains that the stocking of the shelf breached Walmart's duty of care to him, but does not provide any direct evidence that the shelf's stocking created a dangerous condition.

---

[2] Walmart employees refer to the top shelf as the top stock. *See generally* Mot., Opp'n.

[3] Further, even if one three-and-a-half inch can of Pedigree dog food was stacked on top of another three-and-a-half inch can, on the top shelf, Plaintiff does not provide evidence suggesting that such stocking would constitute an inherently dangerous condition, and the Court does not find anything inherently dangerous to stacking two cans of dog food, as there is no danger inseparable from such a condition. *See, e.g., Alacan v. Target Corp*, 2015 U.S. Dist. LEXIS 178484, at *4 (noting that an inherently dangerous object requires that the danger must "exist permanently and inseparably in [] the object.").

Plaintiff points to photographs of Pedigree dog food on the aisle in question, on multiple shelves, but again, none of those photographs indicate dangerous stocking of cans. *See* Pl. Ex. 8 (evidencing the shelves without any appearance of precarious stocking). Plaintiff fails to provide evidence that Walmart breached its duty of care to him.

Further, Plaintiff provides no evidence that Walmart's negligent conduct caused his injury. A "mere possibility" of causation "is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Ortega*, 26 Cal. 4th at 1205–06. Moreover, "other owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability." *Id.* at 1206. Plaintiff provides no evidence of how the subject can was stocked prior to the incident. Plaintiff thus offers no information that would demonstrate the subject can was improperly stocked, or that Walmart knew of the can's improper stocking prior to the incident. Instead, Plaintiff merely speculates that the subject can was improperly stocked such that it created a dangerous condition about which Walmart should have known. This "mere possibility" that Walmart's failure to correct a speculated-on condition is insufficient to create liability for Walmart regarding Plaintiff's injury. *Ortega*, 26 Cal. 4th at 1205. As such, Plaintiff cannot meet his burden to demonstrate Defendant's breach of duty or causation of his injury, both prerequisites for succeeding on his negligence claim or his premises liability claim.

Plaintiff also attempts to argue he has demonstrated negligence by showing that Walmart employees are in charge of stocking the shelves on the dog food aisle, and that cans do not fall from displays if they are stacked property. Opp'n at 8–11. In other words, Plaintiff attempts to argue, by implication, that Defendant is negligent because Walmart employees are in charge of stocking shelves and cans do not ordinarily fall from shelves if properly stacked. This argument sounds in *res ipsa loquitur*, and as noted below, is inapplicable to the instant action.

### 3. Res Ipsa Loquitur

In the alternative, Plaintiff argues that, even if he has not met his burden to establish a breach of duty sufficient for a negligence or premises liability claim, there is sufficient

evidence for liability to arise under *res ipsa loquitur*. Opp'n at 21–23. Defendants argue Plaintiff did not allege application of *res ipsa loquitur* in the Complaint, and regardless, Plaintiff cannot prove the applicability of the doctrine because he cannot show that Defendant had exclusive control over the relevant area. Mot. at 24.

In California, *res ipsa loquitor* is a presumption affecting the burden of producing evidence. *Brown v. Poway Unified School Dist.*, 4 Cal. 4th 820, 826 (1993). *Res ipsa loquitur* shifts the burden of producing evidence to the defendant in a negligence case, and it arises when the plaintiff's evidence satisfies through conditions: "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone else's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Id.* at 825–26 (quoting *Ybarra v. Spangard*, 25 Cal. 2d 486, 389 (1944)). However, in California, the doctrine of *res ipsa loquitur* is generally inapplicable to cases involving negligence or premises liability on behalf of a defendant store. *Ellis v. Target Corp.*, 2016 WL 9185390, at *4 (C.D. Cal. 2016); *Vaughn v. Montgomery Ward & Co.*, 95 Cal. App. 2d 553, 557 (1950); *Moore v. U.S.*, No. 13-cv-931-DHB, 2016 WL 7626580 (S.D. Cal. Feb. 19, 2106) (citing *Brown v. Poway Unified School Dist.*, 4 Cal. 4th 820, 826 (1993)).

Similar to the aforementioned cases, the instant action does not call for the application of *res ipsa loquitur*. Where, as here, the circumstance causing Plaintiff's injury just as likely occurred due to behavior of the Defendant employee as due to the behavior of another customer or outside occurrence, neither is more probable than the other. *See Poway*, 4 Cal. 4th at 827. Accordingly, there is no basis for finding that the incident was "caused by an agency or instrumentality within the defendant's exclusive control." *Id.* at 827. Particularly here, where the store undoubtedly had numerous customers, the shelf and the subject can could not have been in Walmart's exclusive control. *Res ipsa loquitur* is thus inapplicable to Plaintiff's negligence and premises liability claims.

### 4. Plaintiff's Negligence and Premises Liability Claims

Plaintiff John Blackburn has not met his burden to demonstrate that Defendant breached its duty of care to him, as is necessary to succeed on a negligence or premises liability claim. Further, John Blackburn cannot succeed on a negligence claim through the doctrine of *res ipsa loquitur*. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's negligence claim and GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's premises liability claim.

### B. Loss of Consortium

Defendants next argue that Plaintiff Diane Blackburn's loss of consortium claim fails as a matter of law because her claim is based entirely upon Plaintiff's negligence and premises liability claims. Mot. at 14–15.

"The relevant injury in a loss of consortium claim is injury to the spouse's enjoyment of the marital relationship." *Leonard v. John Crane, Inc.*, 206 Cal. App. 4th 1274, 1290 (2012). "That injury does not occur until the direct victim suffers an appreciated physical or emotional injury *due to the defendant's negligent* conduct that in turn damages the marital relationship." *Leonard*, 206 Cal. App. 4th at 1290 (emphasis added).

As the Court finds that Plaintiff John Blackburn cannot succeed on his negligence or premises liability claim, there is no negligent conduct by Defendant that could give rise to liability for Plaintiff Diane Blackburn's loss of consortium claim, and Diane Blackburn cannot succeed on this claim. The Court thus GRANTS Defendant's Motion for Summary Judgment as to Plaintiff Diane Blackburn's loss of consortium claim.

IV. DISPOSITION

For the aforementioned reasons, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's negligence claim, premises liability claim, and loss of consortium claim.

DATED: August 23, 2019

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE